**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
L. Timothy Fisher (State Bar No. 191626)
Annick M. Persinger (State Bar No. 272996)
Yeremey Krivoshey (State Bar No. 295032)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: scott@bursor.com
        ltfisher@bursor.com
        apersinger@bursor.com
        ykrivoshey@bursor.com

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARLENE BEGAY, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>  v.<br><br>NEST LABS, INC.,<br><br>        Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Marlene Begay brings this action on behalf of herself and all others similarly situated against Nest Labs, Inc.  Plaintiff makes the following allegations based upon information and belief, except as to the allegations specifically pertaining to her, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      Defendant misrepresented that the Second Generation Nest Learning Thermostat ("NLT") could save 20% on heating and cooling bills.  Specifically, Nest represented on all Second Generation NLT product packaging that:

- "Most thermostats waste 20% of your heating and cooling bill.  Nest stops the waste."; or
- "If your thermostat doesn't have a schedule, you could be wasting 20% of your heating and cooling bill.  Nest helps stop the waste."

But Defendant's "waste 20%" savings figure was based on the fiction that people without Nest do not change their temperature settings at all, as well as Environmental Protection Agency ("EPA") estimates that the EPA had abandoned years before Nest's launch.  After numerous studies demonstrated that the actual savings from Nest fall well short of the savings Defendant claimed, Defendant has been forced to admit that its savings claims were way off.

2.      Plaintiff purchased a NLT in 2013 at a substantial price premium expecting to secure the energy savings expressly promised by Nest.  Not only did Plaintiff pay for the NLT based on a false and misleading energy savings representation, she also did not experience the savings that Defendant promised.  Because Plaintiff and the proposed class members have been damaged by Defendant's inaccurate and misleading representations, Plaintiff brings this action seeking monetary, and declaratory relief.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and because members of the proposed class are citizens of a state different from the state of Defendant.

1    4.    This Court has general jurisdiction over Defendant because Defendant is

2    headquartered in California.  Further, Defendant conducts substantial business within California

3    such that Defendant has significant, continuous, and pervasive contacts with the State of California.

4    5.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Plaintiff Begay

5    purchased NLT in this District, and the challenged mislabeling, misbranding, and marketing

6    practices have been disseminated and committed in this District and because Defendant is

7    headquartered in this District.

8    **THE PARTIES**

9    6.    Plaintiff Marlene Begay is a citizen of California, residing in Los Altos.  In or

10   around April 7, 2013, she purchased a Second Generation NLT from a Best Buy retail store for

11   approximately $272.49.  Prior to purchasing NLT, Begay reviewed the product packaging which

12   indicated that "Most thermostats waste 20% of your heating and cooling bill.  Nest stops the

13   waste."  At Best Buy, Begay also found the NLT on an in-store display that touted NLT's 20%

14   savings on heating and cooling bills.  Begay read and relied on Defendant's representation found

15   on the Product packaging that "Most thermostats waste 20% of your heating and cooling bill.  Nest

16   stops the waste" before purchasing and installing the NLT.  Begay would not have purchased or

17   installed Nest if she had known the truth about Defendant's representations concerning NLT.

18   Instead, she would have continued to use her traditional Honeywell Thermostat that retails for

19   around $30.00.

20   7.    Defendant Nest Labs, Inc. is a Delaware company with its headquarters and

21   principal place of business located at 850 Hansen Way, Palo Alto, California 94304.

22   8.    Defendant markets and sells its Nest "Learning Thermostat" widely throughout

23   California, and nationwide.  Defendant has manufactured, marketed, and sold the NLT using the

24   deceptive, false, and misleading claims described herein since at least 2012.

25

26

27

28

CLASS ACTION COMPLAINT                                                                                2

9.      Defendant distributes the NLT to several leading retailers including brick and mortar retailers such as Best Buy, Lowes, Target, and Home Depot.  These retailers purchase NLTs for resale to Defendant's intended end-user customers like Plaintiff and the Class.

10.     Due to NLT's purported cost and energy saving capabilities, NLT sells for a retail price of $249.  The $249 purchase price reflects a substantial price premium over traditional thermostats.

## FACTS COMMON TO ALL CAUSES OF ACTION

### A.      Defendant's False and Misleading Energy Savings Representations

11.     With respect to its Second Generation NLT, Defendant represented on NLT product packaging that:

- "If your thermostat doesn't have a schedule, you could be wasting 20% of your heating and cooling bill.  Nest helps stop the waste"; and

- "Most thermostats waste 20% of your heating and cooling bill.  Nest stops the waste."

12.     Defendant abandoned the 20% savings representations in February 2015.

### B.      Defendant's 20% Savings Estimate Was Inflated

#### 1.      Defendant's 20% Figure Was Based on the Fiction That People Don't Adjust Their Thermostats

13.     Defendant's misleading 20% savings figure was based on the faulty assumption that most people do not change their thermostat at all (the "constant temperature assumption" or the "no setback assumption").

14.     In 2014, when Nest, as well as other independent organizations, used actual customer bills to evaluate the amount saved on heating and cooling (instead of using a simulation based on the faulty "no set back" assumption), the energy savings from NLT fell short of the 20% Defendant had been claiming all along.

15.     Defendant's 20% figure and average annual dollar savings representations grossly overstated savings because the assumption that consumers kept their thermostats at a constant temperature prior to buying NLT was groundless and incorrect.

16.    In that connection, in studies on NLT's energy savings conducted by the Oregon Energy Trust and Nest, the majority of survey participants who had a programmable thermostat prior to having NLT reported that they used scheduled setbacks throughout the day and did not leave their thermostats at a constant temperature before installing NLT.

17.    Similarly, surveys conducted by Vectren Indiana, and the Oregon Energy Trust showed that the majority of respondents who previously had a manual thermostat before NLT reported using scheduled or changing set points before installing NLT.  In short, Defendant's "constant temperature" assumption was wrong. The faulty "constant temperature" assumption grossly inflated Defendant's energy saving estimates.

18.    Because the assumption that consumers kept their thermostats at a constant temperature was wrong, the use of that assumption in Defendant's simulation inflated Defendant's energy saving estimates and left them with a marketing problem where the savings % that they messaged had to drop from 20% to 15% or less.  In other words, Defendant's 20% was inaccurate and misleading

### 2.    Defendant Also Based the 20% Figure on Estimates Abandoned by the EPA

19.    Defendant's 20% savings representations also originated from discredited statements by the EPA.  For example, in Nest's 2012 White Paper NLT Efficiency Simulation, Nest supported its faulty simulation findings that used the no setback assumption with the statement that "[t]his is consistent with the EPA's estimate that a properly programmed thermostat can save 20% on heating and cooling costs."

20.    Even though the EPA expressed concern in 2003 that programmable thermostats may have been achieving considerably lower savings than their estimated potential, Defendant relied on old EPA estimates starting in 2011 when Defendant first released an earlier version of the NLT.

21.    In fact, in 2009, two years before NLT was released to the public, field research lead the EPA to end the Energy Star designation for programmable thermostats.

22.     In other words, despite the EPA's concerns about the lack of field testing to substantiate energy savings claims, Defendant did not do any studies using billing analysis before representing that the NLT could stop the waste of 20% on heating and cooling bills.

23.     It was only after the results of Defendant's MyEnergy study and four independent studies showed that average savings from NLT fell well short of 20% that Defendant admitted that the old EPA estimate wasn't based on real savings data, and that programmable thermostats lost their Energy Star rating as a result.

24.     In short, without doing any testing using customer bills, Defendant made misleading energy savings representations that don't add up in real homes.

### 3.     Testing That Used Actual Billing Data Showed That Energy Savings from Nest Fell Short of the 20% Defendant Had Been Claiming All Along

25.     When Defendant, as well as independent organizations, performed studies that used actual billing data to compare energy use before and after installing NLT, instead of the faulty "no setback" assumption, the results showed savings that fell short of the 20% Nest had been claiming all along.

26.     As Defendant recently admitted in February 2015:
This white paper summarizes the results from three studies of Nest Learning Thermostat energy savings based on comparisons of utility bills from before and after installation. Two of the studies were each independently funded, designed and evaluated – one conducted in Oregon and the other in Indiana. The third study was performed by Nest using a national sample of Nest customers across 41 states in the U.S. who had enrolled in Nest's MyEnergy service.

The energy savings results of all three studies were similar – showing Nest Learning Thermostat savings equal to about 10%-12% of heating usage and electric savings equal to about 15% of cooling usage in homes with central air conditioning.

*See* 2/2015 Nest White Paper.

27.     Because Nest knew that its 20% figure was wrong, on February 2, 2015, Defendant changed the numbers.  For example, the packaging for the Nest Third Generation Thermostat, which was released in 2015, now states that "the Nest Thermostat saved an average of 10-12% on heating bills and 15% on cooling bills. That means it can pay for itself in under two years." Although Nest fixed its misleading claims for Third Generation purchasers, it failed to notify

1   Second Generation purchasers of its mistake, and provided no compensation or reimbursement to

2   Second Generation NLT purchasers who had relied on Defendant's misleading 20% claims.

### CLASS ACTION ALLEGATIONS

4       28.     Plaintiff brings this action on her own behalf, and on behalf of the Class defined as

5   all persons in California, Delaware, Kansas, Missouri, New Jersey, Ohio, and Utah, who purchased

6   a Second Generation Nest Thermostat in-store from a retailer for personal or household use prior to

7   February 2015.  Excluded from the Class are online purchasers of the NLT, including but not

8   limited to purchasers who bought their thermostats directly from Nest, Defendant, its affiliates,

9   employees, officers and directors, persons or entities that purchased Nest for resale, and the

10  Judge(s) assigned to this case.

11      29.     Plaintiff also brings this action on her own behalf and a California Class defined as

12  all persons in California who purchased a Second Generation Nest Thermostat in-store from a

13  retailer for personal or household use prior to February 2015.  Excluded from the Class are online

14  purchasers of the NLT, including but not limited to purchasers who bought their thermostats

15  directly from Nest, Defendant, its affiliates, employees, officers and directors, persons or entities

16  that purchased Nest for resale, and the Judge(s) assigned to this case.

17      30.     Rule 23(a)(1) requires the class to be sufficiently numerous such that joinder of all

18  class members is impracticable.

19      31.     Defendant sells hundreds of thousands of Nest Thermostats.  It is estimated that

20  Defendant sells 100,000 Nest Thermostats per month at roughly $250 per unit.  Nest Thermostats

21  are available in major retail stores in California, Delaware, Kansas, Missouri, New Jersey, Ohio,

22  and Utah.  Based on the popularity of Nest, there are likely hundreds of thousands of Class

23  members.  Accordingly, members of the Class are so numerous that their individual joinder herein

24  is impracticable.  The precise number of Class members and their identities are unknown to

25  Plaintiff at this time but may be determined through discovery.  That information is in the

26  possession of Defendant.  Class members may be notified of the pendency of this action by mail,

27  email, and/or publication through the distribution records of Defendant and third party retailers and

28  vendors.

32.     Rule 23(a)(2) requires the class claims to contain common issues of fact or law. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to:

      a.   Whether Defendant breached an express warranty made to Plaintiff and the Class;

      b.   Whether Defendant advertised or marketed Nest Thermostats in a way that was false or misleading;

      c.   Whether Defendant's conduct was false, misleading, or reasonably likely to deceive ordinary consumers;

      d.   Whether Class members have been injured by Defendant's conduct;

      e.   Whether Class members suffered an ascertainable loss as a result of Defendant's misrepresentations;

      f.   Whether Class members are entitled to damages, restitution, injunctive relief, and/or monetary relief and, if so, the amount and nature of such relief;

      g.   Whether Defendant violated California Civil Code §§ 1750, *et seq.*;

      h.   Whether Defendant violated California Business & Professions Code §§ 17200, *et seq.*; and

      i.   Whether Defendant violated California Business & Professions Code §§ 17500, *et seq.*

33.     The claims of the named Plaintiff are typical of the claims of the Class in accordance with Rule 23(a)(3) because Plaintiff (a) was exposed to Defendant's false and misleading packaging, marketing, and promotion of Nest Thermostats; (b) relied on Defendant's misrepresentations; and (c) suffered a loss as a result of her purchase.  Each Class member was subjected to the same conduct, was harmed in the same way, and has claims for relief under the same legal theories.

34.     Rule 23(a)(4) requires that the class representative and class counsel adequately represent the Class.

1      35.     Plaintiff is an adequate representative of the Class because her interests do not

2 conflict with the interests of the Class members she seeks to represent, she has retained competent

3 counsel experienced in prosecuting class actions, and they intend to prosecute this action

4 vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiff and

5 her counsel.

6      36.     Rule 23(b)(3) requires that common issues predominate over any issues impacting

7 individual Class members.  The common issues identified above predominate.  Rule 23(b)(3) also

8 requires that the class action be superior to all other available means of fair and efficient

9 adjudication of the Class' claims.

10     37.     The class mechanism is superior to other available means for the fair and efficient

11 adjudication of the claims of the Class members.  The monetary value of each individual Class

12 member's claim is small compared to the burden and expense of individual litigation.  Each

13 individual Class member may lack the resources to undergo the burden and expense of individual

14 prosecution of the complex and extensive litigation necessary to establish Defendant's liability.

15 Individualized litigation increases the delay and expense to all parties and multiplies the burden on

16 the judicial system presented by the complex legal and factual issues of this case.  Individualized

17 litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class

18 action device presents far fewer management difficulties and provides the benefits of single

19 adjudication, economy of scale, and comprehensive supervision by a single court on the issue of

20 Defendant's liability.  Class treatment of the liability issues will ensure that all claims and

21 claimants are before this Court for consistent adjudication of the liability issues.  Judicial economy

22 is served by litigating the Class claims in one case.

### COUNT I
**Violation Of California's Consumers Legal Remedies Act ("CLRA"),
California Civil Code §§ 1750, *et seq.***

25      68.     Plaintiff hereby incorporates by reference the allegations contained in all preceding

26 paragraphs of this complaint.

69.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Class against Defendant.

70.     Plaintiff and the Class members are consumers who purchased Nest for personal, family or household purposes.  Plaintiff and the Class members are "consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d).  Plaintiff and the Class members are not sophisticated experts with independent knowledge of energy saving, or cost savings from thermostats.

71.     The Nest Thermostats that Plaintiff and other Class Members purchased from Defendant were "goods" within the meaning of Cal. Civ. Code § 1761(a).

72.     Defendant's actions, representations, omissions and conduct have violated and continue to violate the CLRA because they extend to transactions that intended to result, or which have resulted in, the sale of goods to consumers.

73.     Cal. Civ. Code § 1770(a)(5), prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have …."  Cal. Civ. Code § 1770(a)(9) further prohibits "[a]dvertising goods or services with intent not to sell them as advertised."

74.     Defendant violated Cal. Civ. Code § 1770(a)(5) and (a)(9) by misrepresenting that Nest stopped the waste of 20% of heating and cooling bills as described above.  Defendant knew, or should have known based on field research that Nest did not provide the promised energy and cost savings.

75.     A reasonable consumer would not have purchased or paid as much for Nest had Defendant refrained from the affirmative misstatements identified above because that information is material to a reasonable consumer.

76.     Plaintiff and the Class suffered injuries caused by Defendant because: (a) they would not have purchased Nest Thermostats on the same terms if the true facts were known concerning Defendant's energy and cost savings representations; (b) they paid a substantial price premium compared to traditional thermostats due to Defendant's representations that Nest provide

20% savings on heating and cooling bills as described above; (c) they did not receive the promised energy-cost savings; and (d) Nest did not have the characteristics, uses, or benefits as promised.

77.     On or about February 7, 2014, prior to filing of the related action *Darisse v. Nest Labs Inc.*, Case No. 5:14-cv-01363-BLF, a CLRA notice letter concerning Defendant's 20% savings representations was served on Defendant which complies in all respects with California Civil Code § 1782(a).

78.     Wherefore, Plaintiff seeks damages, and restitution for this violation of the CLRA.

**COUNT II**
**Violation Of California's Unfair Competition Law ("UCL"),**
**California Business & Professions Code §§ 17200, *et seq.***

79.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

80.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Class against Defendant.

81.     Defendant is subject to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

82.     Defendant violated the "unlawful" prong of the UCL by violating the CLRA, the FAL, and by breaching its express and implied warranties as described herein.

83.     Defendant's misrepresentations and other conduct, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.  Defendant's practice of over-promising energy and cost savings to sell exorbitantly expensive thermostats is of no benefit to consumers.  Defendant's conduct of selling NLT without using actual billing data to establish energy savings and instead relying on self-serving simulations offends public policy.  Defendant's conduct has also impaired competition within the thermostat market by inflating the cost of thermostats through the use of

inaccurate representations and has prevented Plaintiff from making fully informed purchasing decisions regarding thermostats.

84.     Defendant violated the "fraudulent" prong of the UCL by making misrepresentations about Nest Thermostats, as described herein.  Defendant's misrepresentations and omissions regarding Nest are likely to deceive a reasonable consumer, and thereby would be material to a reasonable consumer.

85.     Plaintiff and the Class members acted reasonably when they relied on Defendant's misrepresentations and purchased Defendant's products.  Moreover, Plaintiff and the Class members are presumed to have relied on such misrepresentations and omissions because they appeared on product packaging as described above and related to material facts – NLT's ability to save consumers money over other thermostats.

86.     Plaintiff and the Class members are not sophisticated experts with independent knowledge of thermostats, or how thermostats could result in energy and cost savings.  Thus, Plaintiff and the Class members acted reasonably when they purchased Defendant's products based on their belief that Defendant's representations were true.

87.     Plaintiff and the Class lost money or property as a result of Defendant's UCL violations because: (a) they would not have purchased Nest on the same terms if the true facts were known concerning Defendant's energy and cost savings representations; (b) they paid a price premium for Nest Thermostats due to Defendant's promises and representations described herein; (c) they did not receive the promised energy-cost savings; and (d) Nest Thermostats did not have the characteristics, uses, or benefits as promised.

88.     All the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendant's business.  Defendant's wrongful conduct is part of a pattern or generalized conduct that originates from Defendant's headquarters in California and is still perpetuated and repeated, both in California and nationwide.

89.     Plaintiff requests that this Court enter such orders or judgments to enjoin Defendant from continuing its unfair, unlawful, and deceptive practices and to restore to Plaintiff and the

1    members of the Class any money Defendant acquired by unfair competition, as provided in Cal.

2    Bus. & Prof. Code § 17203, and for such other relief as set forth below.

3                                        **COUNT III**
                        **Violation Of California's False Advertising Law ("FAL"),**
4                  **California Business & Professions Code §§ 17500, *et seq.***

5            90.     Plaintiff hereby incorporates by reference the allegations contained in all preceding

6    paragraphs of this complaint.

7            91.     Plaintiff brings this claim individually and on behalf of the members of the

8    proposed California Class against Defendant.

9            92.     California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*,

10   makes it "unlawful for any person to make or disseminate or cause to be made or disseminated

11   before the public in this state, ... in any advertising device ... or in any other manner or means

12   whatever, including over the Internet, any statement, concerning ... personal property or services,

13   professional or otherwise, or performance or disposition thereof, which is untrue or misleading and

14   which is known, or which by the exercise of reasonable care should be known, to be untrue or

15   misleading."

16           93.     Defendant committed acts of false advertising, as defined by §§17500, *et seq.,* by

17   making misrepresentations about Nest's accuracy and energy and cost saving capabilities as

18   described herein.

19           94.     Defendant disseminated from its headquarters in California through California and

20   the United States, affirmative misstatements and omissions that were untrue or misleading.

21           95.     Defendant knew or should have known through the exercise of reasonable care (i.e.

22   pre-market testing) that their representations about Nest were untrue and misleading.

23           96.     Defendant's misrepresentations and omissions concerned material facts, namely

24   Nest's ability to reduce energy use, and to reduce costs.  As such, Defendant's actions in violation

25   of §§ 17500, *et seq.* were false and misleading such that the general public is and was likely to be

26   deceived.

27

28

---

CLASS ACTION COMPLAINT

97.     Plaintiff and the Class lost money or property as a result of Defendant's FAL violations because:  (a) they would not have purchased Nest on the same terms if the true facts were known concerning the falsity of Defendant's energy and cost savings representations; (b) they paid a price premium for Nest Thermostats due to Defendant's promises and representations described herein; (c) they did not receive the promised energy-cost savings; and (d) Nest Thermostats did not have the characteristics, uses, or benefits as promised.

98.     All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendant's business.  Plaintiff requests that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing its false advertising and to restore to Plaintiff and members of the Class any money Defendant acquired by unfair competition, and for such other relief set forth below.

<u>**COUNT IV**</u>
**Breach Of Express Warranty**

99.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

100.    Plaintiff bring this claim individually and on behalf of NLT purchasers in California, Delaware, Kansas, Missouri, New Jersey, Ohio, and Utah.

101.    Plaintiff, and each Multi-State Class member, formed a contract with Defendant at the time Plaintiff and each Multi-State Class member purchased a Nest Thermostat.  As described above, the terms of the contract include the promises and affirmations of fact relating to the energy savings, cost savings representations on Defendant's product packaging, as described above.  Defendant's packaging representations became part of the basis of the bargain and are part of a contract between Plaintiff and the members of the Class on the one hand, and Defendant on the other, and thus constituted express warranties.

102.    Defendant, as the designer, manufacturer, marketer, distributor, or seller expressly warranted, among other things, the following material terms about Nest Thermostats:

        (a)     "If your thermostat doesn't have a schedule, you could be wasting 20% of your heating and cooling bill.  Nest helps stop the waste"; and

(b)     "Most thermostats waste 20% of your heating and cooling bill.  Nest stops the waste."

103.    Through its brick and mortar retailers, Defendant sold the goods to Plaintiff and the other Class members, who bought the goods from Defendant.  Plaintiff and the Class members are ordinary consumers who are not versed in the art of inspecting and judging the properties of thermostats.  Plaintiff and the Class acted reasonably based on Defendant's cost saving, and energy saving representations.

104.    Defendant breached the terms of this contract, including the express warranties described in this Count IV as well as above, because Nest does not stop the waste of 20% of heating and cooling bills.  Therefore, Defendant's express warranties were false, misleading and deceptive.  As a result of this breach, Plaintiff and the Class did not receive the goods as warranted by Defendant.

105.    Plaintiff and Class members were injured and harmed as a direct and proximate result of Defendant's breach because: (a) they would not have purchased Nest on the same terms if the true facts were known concerning the falsity of Defendant's energy and cost savings representations; (b) they paid a price premium for Nest Thermostats due to Defendant's promises and representations described herein; (c) they did not receive the promised energy-cost savings; and (d) Nest Thermostats did not have the characteristics, uses, or benefits as promised.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, seeks judgment against Defendant as follows:

a.   For an order certifying a the classes described herein under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the representatives of the Classes and Plaintiff's attorneys as Class Counsel;

b.   For an order declaring that Defendant's conduct violates the statutes referenced herein;

c.   For an order finding in favor of Plaintiff, and the California class members on all counts asserted herein;

d.   For an order finding in favor of Plaintiff, and the class members on their claim for breach of express warranty.

e.   For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

f.   For prejudgment interest on all amounts awarded;

g.   For an order of restitution and all other forms of equitable monetary relief;

h.   For an order awarding Plaintiffs and the Class their reasonable attorneys' fees, and expenses;

i.   Damages, restitution, and/or disgorgement in an amount to be determined at trial; and

j.   For such other and further relief as the Court may deem proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all causes of action and issues so triable.

Dated: September 6, 2016                          Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:    _/s/ Annick M. Persinger_
          Annick M. Persinger

Scott A. Bursor (State Bar No. 276006)
L. Timothy Fisher (State Bar No. 191626)
Annick M. Persinger (State Bar No. 272996)
Yeremey Krivoshey (State Bar No. 295032)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: scott@bursor.com
          ltfisher@bursor.com
          apersinger@bursor.com
          ykrivoshey@bursor.com

## CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)

I, Marlene Begay, declare as follows:

1.      I am a plaintiff in this action. I have personal knowledge of the facts stated herein and, if called as a witness, I could and would testify competently thereto.

2.      The complaint filed in this action is filed in the proper place because, as shown on the Nest website and elsewhere, Defendant Nest Labs, Inc. ("Nest Labs") is headquartered and has its principal place of business in this District at 900 Hansen Way, Palo Alto, California 94304. Nest Labs also conducts substantial business in this District.

3.      This action is also filed in the proper place because a substantial portion of the transaction occurred in this District because I reside in this District and purchased my Nest Learning Thermostat in this District.

4.      I purchased the Nest Learning Thermostat for use in my household. I purchased the product after I reviewed Nest Labs' marketing material and representations online, such as on the Nest website, including that the Nest Learning Thermostat provides 20% savings on heating and cooling bills. I also read and relied on Nest Labs' 20% representations found on the packaging before installing the Nest Learning Thermostat. Nest Labs' 20% savings claims about the Nest Learning Thermostat were a substantial factor influencing my decision to purchase the product. I would not have purchased the Nest Learning Thermostat had I known that the 20% cost savings were false and misleading.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on July 7, 2016 at Santa Clara, California.

MARLENE BEGAY